# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JONATHON SCOTT BOURNE,**

      **Plaintiff,**

**v.**                                        **Civil Action No. 5:15cv67**
                                                  **(Judge Stamp)**

**PAT MIRANDY, Warden, St. Marys Corr.
Ctr.; JOYCE BILLS, IPO[1] at St. Marys Corr.
Ctr.; and DANIEL KIMBLE, Unit Manager,**

      **Defendants.**

## REPORT AND RECOMMENDATION

On June 3, 2015, the *pro se* plaintiff Jonathon Scott Bourne ("plaintiff"), an inmate incarcerated at St. Marys Correctional Center ("SMCC") in St. Marys, West Virginia, initiated this case by filing a filing a civil rights complaint pursuant to 42 U.S.C. §1983 along with a motion to proceed as a pauper and supporting documents. By Order entered June 8, 2015, the plaintiff was granted permission to proceed as a pauper and directed to pay an initial partial filing fee. On June 26, 2015, plaintiff paid the requisite fee. On July 8, 2015, the undersigned conducted a preliminary review of this matter and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was entered, and twenty-one (21) day summonses were issued for each of the defendants. On August 3, 2015, the defendants filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment. On August 5, 2015, the undersigned issued a Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising plaintiff of his right to file a response and that a failure to respond could result in the entry of a dismissal order against him. On August 21, 2015, plaintiff filed his Reply to Defendant's [sic] Motion to Dismiss or in Alternative [sic], Motion in [sic] Summary Judgment.

---

[1] Ms. Bills is an Institutional Parole Officer ("IPO") at SMCC. <u>See</u> Dkt.# 19-1 at 1.

On September 4, 2015, the defendants filed a Reply. On September 23, 2015, plaintiff filed a Second Response to Defendants Pat Mirandy, Joyce Bills, and Daniel Kimble's Motion to Dismiss or in the Alternative, Motion for summary Judgment. On September 28, 2015, the defendants filed a Motion to Strike plaintiff's second response.

This case is now before the undersigned for a Report and Recommendation pursuant to LR PL P 2.

## II. Contentions of the Parties

### A. The Complaint

Plaintiff brings this complaint over the defendants' actions that allegedly caused a denial of his parole. In the interest of clarity and brevity, his claims have been reworded and reordered here. In sum, he contends that he was not granted parole because:

1) defendant Warden Mirandy failed to take action to cause defendant Joyce Bills ("Bills") to perform her duties, specifically, her duty to prepare necessary paperwork for plaintiff's Parole Board review, and further Mirandy failed to rule properly on a grievance plaintiff filed over the issue;

2) defendant Bills did not ensure that a psychiatric [sic] evaluation[2] was timely performed for plaintiff's November 2014 parole review;

3) defendant Bills did not correct incorrect and outdated information in the Parole Report to be reviewed and considered at a February 2015 Parole Board review; and

4) defendant Kimble failed to perform his duties and correct defendant Bills' oversights, to ensure that plaintiff went to the Parole Board with complete and accurate documentation for its consideration; further, Kimble failed to resolve plaintiff's grievance over the matter.

Plaintiff contends that the defendants' actions resulted in a denial of his liberty interest, 14th Amendment substantive due process rights, and a wrongful lengthening of his sentence.

---

[2] Plaintiff was convicted in Mineral County, West Virginia in Case NO. 10-F-150, on one count of abduction of person, kidnapping/concealing child with the purpose of defiling; one count of conspiracy to commit a felony; one count of incest; and one count of sexual assault in the third degree. See the WVDOC's online Offender Search. As a convicted sex offender, plaintiff is required to have a psychological evaluation prior to consideration for parole. See Dkt.# 19-1 at 1; W.Va. Code §62-12-13(b)(1)(D) & (2).

Plaintiff maintains that he has exhausted his administrative remedies.

As relief, plaintiff seeks injunctive relief, in the form of investigation of "these failures in other cases" at SMCC; an immediate parole hearing or "constitutional release;" and punitive damages of $200,000.00, as well as "monetary" and "compensatory" damages of $500,000.00 each.[3]

## **Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment**

The defendants assert that the complaint should be dismissed or summary judgment granted in their favor because

1) plaintiff's complaint fails to state a claim upon which relief may be granted under 42 U.S.C. §1983;

2) plaintiff's claims regarding his February 2015 parole hearing must be dismissed because he failed to exhaust his administrative remedies with respect to them; and

3) even if plaintiff had exhausted his administrative remedies regarding the Parole Board's February 2015 denial of parole, his claims regarding the February 2015 hearing would be moot anyway, because he suffered no harm as a result.

4) Plaintiff's request for the remedy of immediate release makes his sole available remedy a writ of habeas corpus, pursuant to the holding of <u>Preiser v. Rodriguez</u>.[4]

## **Plaintiff's Response to Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment**

Plaintiff reiterates his arguments and attempts to refute the defendants' on the same.

## **Defendants' Reply to Plaintiff's Response**

The defendants argue that

1) plaintiff's response ignores the fact that the defendants were not the cause of the delay in plaintiff's psychological evaluation and that they did not commit any constitutional violations which would sustain a claim under §1983;

---

[3] Dkt.# 1 at 9.

[4] <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973).

2) plaintiff's response misapprehends the defendants' argument regarding plaintiff's failure to exhaust his administrative remedies regarding the February 2015 parole hearing; and

3) plaintiff ignores the fact that his application for parole was given substantive consideration by the Parole Board in February 2015, and his application was denied for reasons unrelated to any of his allegations.

**Plaintiff's Second Response to Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment**

Plaintiff filed an additional response, or surrebuttal, to defendants' reply, again attempting to reiterate his arguments and refute the defendants' position on them. However, under the local rules of this District, surrebuttal memoranda may not be filed, and will not be considered by the undersigned. See LR PL P 11.4.

Defendants' Motion to Strike Plaintiff's Second Response to their Dispositive Motion

Defendants contend that plaintiff's second response to their dispositive motion is an impermissible surreply or surrebuttal, in violation of LR PL P 11.4 and should be stricken in accordance with LR PL P 13.

### III. Standard of Review

#### A. Motion to Dismiss

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a

formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. <u>Id</u>. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). In other words, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley, 355 U.S. at 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. <u>Motion for Summary Judgment</u>**

Summary judgment is appropriate "if the pleadings, depositions, answers, interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Fed. Deposit Ins. Corp.</u>, 906 F.2d 972, 974

(4th Cir. 1990). In applying the standard for summary judgment, a court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp.</u>, 477 U.S. at 322-23. The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id</u>. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id</u>. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

# IV. <u>Analysis</u>

Plaintiff is representing himself, which requires the Court to liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978); <u>Gordon v. Leeke</u>, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadins are held to a less stringent standard than those drafted by attorneys, <u>Haines</u>, 404 U.S. at 520, even under this less stringent standard, a pro se complaint is still subject to dismissal. <u>Id.</u> at 520 – 21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. <u>Barnett v. Hargett</u>, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274 (4th Cir. 1985).

## A. <u>Exhaustion of Administrative Remedies Under §1997e</u>

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. §1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. §1997(e)(a). Exhaustion as provided in §1997(e)(a) is mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). An action under 42 U.S.C. §1983, is subject to the exhaustion of administrative remedies. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[5] and is required even when the relief sought is not available. <u>Booth</u> at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in

---

[5] <u>Porter</u> at 524.

federal court. See Porter at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth at 741, n. 6.

The PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006). Pursuant thereto, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Id. at 2387 (emphasis supplied). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. See id. at 2393.

In Jones v. Bock, the Supreme Court of the United States concluded that "failure to exhaust is an affirmative defense under PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). However, it is a well-established Fourth Circuit principle that "the district court's authority to *sua sponte* dismiss an *in forma pauperis* complaint frivolous [is] broad enough to permit the court to dismiss a complaint on the basis of an affirmative defense that was apparent from the facts alleged in the complaint." Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 681-82 (4th Cir. 2005)(citing Nasim v. Warden, 64 F.3d 951, 954-55 (4th Cir. 1995)).

The WVDOC has established a three-level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2

Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections. The West Virginia Jail and Correctional Facility Authority's *Handbook of Inmate Rules and Procedure* explicitly sets forth the details for the process for filing and fully exhausting grievances:

> 1. If an inmate wishes to use the grievance procedure, jail personnel will provide the inmate with an inmate with an inmate grievance form.
>
> 2. The inmate shall complete the form, addressed to the Administrator; the form, as completed by the inmate, shall be transmitted to the Administrator's office by jail personnel without being read or altered and within a reasonable time, not later than the end of the shift.
>
> 3. The Administrator upon receipt of the grievance may reject the grievance if it appears on its face to have been filed in bad faith.
>
> 4. The Administrator, if the grievance is not rejected pursuant to Paragraph 3, shall provide the inmate an opportunity to be heard before a decision is made on the grievance. The Administrator may assign a staff member to investigate the complaint and report written findings within forty-eight hours and shall inform the inmate of such action.
>
> 5. The Administrator shall provide a written decision with regard to the grievance to the grieving inmate within twenty-four (24) hours of the receipt of the investigation report. Such written decision shall include a statement of the action taken concerning the grievance, the reasons for such action, and procedures for appeal of the decision.

Finally, if an inmate is dissatisfied with the Administrator's decision, he must file an appeal of that Level Two decision to the Executive Director within five days of the receipt of the Administrator's decision, and must include a copy of the initial complaint and the Administrator's decision.[6]

Although the burden is not on Plaintiff to plead exhaustion, the §1983 form complaint of this Court that is given to inmates asks if the inmate followed the grievance procedure, and directs them to attach copies of their grievances and responses. Plaintiff attached one grievance

---

[6] Available at: http://apps.sos.wv.gov/adlaw/csr/readfile.aspx?DocId=18978&Format=PDF ; see also Dkt.# 26-1.

to his complaint. It is dated December 3, 2014. It alleges in pertinent part that "[o]n or about November 19th or 20th I was informed by the West Virginia Parole Board that DOC personnel at St. Marys Institution [sic] had failed to properly prepare necessary documentation to be presented to the parole board upon my seeing them in November 2014."[7] This grievance was fully exhausted, having been submitted to plaintiff's Unit Manager, defendant Kimble; then to the representative of the Warden, defendant Pat Mirandy ("Mirandy"); and finally, to the Commissioner of the WVDOC, Jim Rubenstein ("Rubenstein"). By memorandum issued on January 7, 2015, Rubenstein directed that "[i]nmate Bourne is to have his paperwork completed immediately upon receipt of this memo so he may be evaluated for parole consideration."[8]

Defendants contend that this sole grievance only addresses Bills' actions with respect to the November 2014 parole hearing and makes no mention of plaintiff's other claims regarding defendant Bills' failure to update plaintiff's pre-parole report before his February 2015 hearing. Therefore, they argue that because the plaintiff did not file/fully exhaust such a grievance before filing the instant complaint, any claim related to the February 2015 parole hearing should be dismissed.[9] In reply, plaintiff contends that he filed his grievance after he learned that "the psych eval [sic] was needed prior to the parole hearing and was not provided."[10] He then argues that the PLRA "does not require each facet of the claim . . . be grieved but merely the substance,"[11] and reiterates his claim that defendants Kimble and Mirandy were at fault for not granting his grievance. He argues that Kimble's response was "not in response to the relief sought nor the

---

[7] Dkt.# 1-1 at 2.

[8] Dkt.# 1-1 at 1.

[9] Dkt.# 19 at 15 – 16.

[10] Dkt.# 25 at 6.

[11] Id.

severity of the situation grieved" and defendant Mirandy's response was "standard boiler-plate hands off."[12]

In the affidavit plaintiff attached to his complaint, he expounds on defendant Bills' alleged misdeeds. However, it is apparent that along with his claim regarding Bills' failure to obtain a timely psych evaluation, plaintiff is now also including events that occurred subsequent to the date he filed his December 3, 2014 grievance, when he complains of Bills'

> Failure to correct errors in the pre-parole document, failure to have the psychological evaluation prepared prior to the hearing, failure to inform me of the need to resubmit and have approved the parole plan, failure to permit a review of the file, ***effectively denied me parole review based upon reliable and accurate information*** and denied me my liberty interest of parole consideration and this rises to an intentional violation under the constitution.

Dkt.# 1-2 at 2 (emphasis added). In his response to the defendants' dispositive motion, plaintiff again elaborates on Bills' deficiencies in preparing documents for the February 2015 hearing, stating that the

> Pre-Parole Report was not correct, the PreSentence Investigation Report was outdated, the institutional misconducts were out of date, the employment status was incorrect and outdated and class requirements were incorrect. On the . . . section below Plaintiff's name and ethnic information [it] calls for supplemental document verification i.e., "most recent psychological report and update; most recent LS/CMI case management protocol; and updated work evaluation," none of these boxes were checked and to state they were known or should have been known is redundant.

Dkt.# 25 at 3.

A careful examination of the only grievance plaintiff filed over any of the issues in this complaint reveals that plaintiff's December 3, 2014 grievance fails to identify which WVDOC personnel he is referring to or what "necessary documentation" they failed to prepare. Nonetheless, affording plaintiff the benefit of liberal construction of his pleadings as the

---

[12] <u>Id.</u>

undersigned is required to do,[13] from a thorough review of the total record, it can be inferred that it is only the actions of defendant Bills in failing to have the psychological evaluation ready in time for the November 2014 parole review, that plaintiff complains of in the grievance. Plaintiff admits as much. In the affidavit attached to his complaint, he states: "I was informed that a psychiatric [sic] evaluation should have been done before the [November 2014] parole hearing. None had been completed. I filed a grievance on this failure[.]"[14] Further, in his reply to the defendants' dispositive motion, he contends that after he learned that "the psych eval [sic] was needed prior to the parole hearing and was not provided" he filed the grievance.[15] Therefore, plaintiff's December 3, 2014 grievance cannot be construed to include any of Bills' later alleged failures: to correct incorrect and outdated information in the pre-parole document; to inform plaintiff of the need to resubmit the parole plan for approval; and to permit him a review of his file, in preparation for the February 2015 Parole Board review.

Plaintiff admits that he did not file any grievance regarding any issue after the date of December 3, 2014. As expected, in their reply to plaintiff's response, the defendants reiterate that plaintiff only fully exhausted his claim related to the November 2014 hearing. They note the WVDOC's Policy Directive No. 335(V)(B)(2)[16] requirement that an inmate submitting a grievance "may grieve only one (1) issue or complaint per form[.]"[17] Upon review of the record, it is apparent that the defendants are correct and that there is no question but that the plaintiff has failed to exhaust his administrative remedies as to his claims regarding any events that occurred

---

[13] <u>Barnett v. Hargett</u>, *supra* at 174 F.3d 1128.

[14] Dkt.# 1-2 at 1.

[15] Dkt.# 25 at 6.

[16] A copy of the Policy Directive is attached to the defendants' dispositive motion. <u>See</u> Dkt.# 19-3 at 3 – 13.

[17] Dkt.# 27 at 6.

after the date of December 3, 2014, thus precluding review of any of his claims regarding events that occurred after that date that affected the outcome of his February 2015 parole review.

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 381 F.3d 523, 529 (3rd Cir. 2003)(summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2nd Cir. 2004)(defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003)(remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(a remedy is not available within the meaning of §1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D. Ga. Oct. 13, 2006)(dismissal for failure to exhaust not appropriate where plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).

Here, plaintiff has clearly failed to exhaust his administrative remedies as to any claims occurring after the date of December 3, 2014. To the extent that exhaustion may be waived, plaintiff's argument that he was only required to file his grievance on the general substance of a claim not only has no merit, it does not excuse his failure to exhaust his other claims. Because plaintiff is now well outside of the time limits for bringing the remaining claims regarding Bills' alleged failures related to the February 2015 Parole Board review, attempting to finish exhausting now would be futile, thus those claims must be dismissed with prejudice.

**B.  Plaintiff's Remaining Due Process Claims**

**1) Defendants Mirandy, Bills and Kimble**

Liability under §1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Therefore, in order to establish liability under §1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988).  Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right under §1983. Rizzo v. Good, 423 U.S. 362 (1976).

In this case, the plaintiff complains that his 14th Amendment due process rights were violated when his November, 2014 parole consideration hearing was postponed because his file did not contain the requisite psychological evaluation necessary for the Parole Board's review. The injury alleged by the plaintiff is the postponement of his parole hearing, denial of his liberty interest and a wrongful lengthening of his sentence.

The Due Process Clauses of the Fifth and Fourteenth Amendments provide that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. V and XIV, §1.  Before it can be determined that the due process clause was violated, it must be determined that a liberty interest was at stake.  Sandin v. Connor, 515 U.S. 472 (1995).

It is well-established that a prisoner has no constitutional right in being released to parole before the expiration of a valid sentence. Id. at 484; see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1 (1979). However, federal courts have recognized due process righs

where the state has created a "legitimate claim of entitlement" to some aspect of parole.  <u>Vann v. Angelone</u>, 73 F.3d 519, 522 (4th Cir. 1996). State laws create a liberty interest when a statute's language "place[es] substantive limitations on official discretion." <u>Olim v. Wakinekona</u>, 461 U.S. 283, 249 (1983).  In West Virginia, an inmate has a right that the board consider him for parole when he is eligible and decide his case in a manner consistent with the criteria set forth in W.Va. Code §62-12-13.  <u>See</u> <u>Rowe v. Whyte</u>, 167 W.Va. 668, 280 S.E.2d 301 (1981); <u>see</u> <u>also</u> <u>State v. Lindsey</u>, 160 W.Va. 284, 233 S.E.2d 734 (W.Va. 1977)(One convicted of a crime and sentenced to the penitentiary is never entitled to parole but he is eligible to be considered for parole).  Thus, accepting the plaintiff's implied statement that he became eligible for parole in November of 2014 as true, he had a liberty interest in being considered for parole by the parole board on November 19, 2014.  The question then becomes whether this right was violated by the actions of defendants Mirandy, Bills and Kimble.

**1) <u>Pat Mirandy, Warden</u>**

The plaintiff alleges that Mirandy, in his capacity as the Warden of SMCC, violated his constitutional rights by failing to train defendant Bills to abide by policy, and failed to take action to cause Bills to perform her duties, i.e., to provide "necessary paperwork" to the West Virginia Parole Board by timely arranging for a psychological evaluation for plaintiff in advance of his November 2014 parole hearing.[18] Plaintiff also alleges that Mirandy "turned a blind eye" to the issue and refused to intervene on plaintiff's behalf because he did not grant plaintiff's grievance over the matter.[19]

It is clear that defendant Mirandy had no personal involvement with the alleged violation of the plaintiff's constitutional rights.  To the contrary, the facts as alleged by the plaintiff

---

[18] Dkt.# 1 at 7.

[19] <u>Id</u>.

establish that Bills is the person whose duty it was to ensure that the psychological evaluation was performed in time for the November 19, 2014 parole review and Mirandy never learned of the situation until after the fact, when plaintiff's parole hearing had already been postponed. Therefore, Mirandy became involved in this case only in his supervisory capacity.

In <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable under §1983 only if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, no upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." <u>Id</u>. However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. <u>Id</u>. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. <u>Id</u>.

Plaintiff has not provided any evidence to show that Mirandy had any actual or constructive knowledge that a subordinate's conduct presented an unreasonable risk of infringing on plaintiff's rights. Nor has the plaintiff established that Mirandy tacitly authorized or was indifferent to an alleged violation of his rights. In fact, Mirandy was unaware of, and did not become involved in this situation until after it had already occurred. At that time, the plaintiff's November 2014 parole hearing had already been postponed and the alleged injury had already been sustained. There was simply nothing Mirandy could have done by that point.

Although plaintiff also alleges that Mirandy was deliberately indifferent to his clearly established constitutional rights by failing to properly train or supervise Bills to ensure she timely provided the psych evaluation for plaintiff's November 2014 parole consideration hearing, this is merely a conclusory allegation. Plaintiff has not introduced any evidence into the record to support such a claim. Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. See Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994). Although Fed. R. Civ. P. 8(c) provides that "all pleadings shall be so construed as to do substantial justice," the Fourth Circuit further holds that a "heightened pleading standard" is highly appropriate in actions against government officials. Randall v. United States, 95 F.3d 339 (4th Cir. 1996). See also Dunbar Corp. v. Lindsey, 905 F.2d 754, 764 (4th Cir. 1990). Here, plaintiff's conclusory allegation regarding Mirandy's failure to train or supervise Bills does not state the kind of specific injury or prejudice to his litigation sufficient to survive summary judgment. At best, the plaintiff has only established that Mirandy should have granted his December 3, 2014 grievance. However, to the extent that the plaintiff may be asserting that Mirandy was deliberately indifferent to his constitutional rights by denying his administrative grievances, that claim is also without merit, because that is not the type of personal involvement required to state a Bivens claim.[20] See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D. Md. March 31, 2003).

Accordingly, here then, the plaintiff has asserted nothing more than a claim that Mirandy had a responsibility to intervene in his supervisory or official capacity. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and

---

[20] In making this inquiry, case law under 42 U.S.C. §1983 is applicable to Bivens actions. See Butz v. Economou, 438 U.S. 478, 504 (1978).

quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978). However, here, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights. Accordingly, the plaintiff has failed to state a claim upon which relief can be granted against defendant Mirandy, and he should be dismissed from this action.

## 2) Joyce Bills, IPO at SMCC

The plaintiff alleges that Joyce Bills, acting in her capacity as SMCC's Institutional Parole Officer, violated his constitutional rights by failing to timely ensure that a psychological evaluation was done and available for the West Virginia Parole Board's review of plaintiff's file on November 19, 2014.

The defendants' dispositive motion and Bills' own sworn affidavit aver that psychological evaluations are only provided to WVDOC inmates through a third-party provider, PsiMed Corrections, LLC ("PsiMed"), not by any employees of the WVDOC.[21] Bills avers that she first requested that plaintiff receive a psychological evaluation on or before October 14, 2014 by delivering a list of inmate's names, including plaintiff's, who needed them for their parole hearings, to Aimee Meadows ("Meadows"), the Psi Med psychologist then serving SMCC; in support of this, she attaches the list.[22] When she did not hear back from Meadows, on October 31, 2014, she sent an email to both Meadows and another PsiMed psychologist, Ashley Spruce

---

[21] Dkt.# 19 at 9 and Dkt.# 19-1 at 1 – 2.

[22] Dkt.# 19, ¶8 at 2; Dkt.# 19-1 at 5 – 7.

("Spruce"),[23] inquiring as to the status of the evaluation, noting it was not complete and that plaintiff's parole hearing was scheduled for November.[24] In support of this, she attaches a copy of the email.[25] She also notified her supervisor, Jack Stollings, of the issue in a November 6, 2014 email,[26] and she attaches a copy of that email in support.[27] However, because Psi Med was then experiencing a staff shortage, it was unable to complete plaintiff's psych evaluation by the date of his November 19, 2014 Parole Board Hearing; Meadows had left PsiMed and Spruce was covering both SMCC and MOCC.[28] Bills emailed Spruce on November 20, 2014, to notify her of PsiMed's failure to perform the required evaluation, noting that plaintiff and the other inmates listed would have to have their parole consideration postponed as a result;[29] she attaches a copy of that email in support.[30] Bills continued to follow up with Spruce, reminding her of the needed evaluation via emails on December 4, 2014 and December 18, 2014;[31] she attaches copies of those emails as proof.[32] Plaintiff's psych evaluation was finally completed in January, 2015.[33] He was seen by the Parole Board on February 12, 2015, but his parole was denied due to the high severity of his offenses; his need to complete certain required WVDOC programs; his recent

---

[23] Ms. Spruce was the psychologist handling Mt. Olive Correctional Center ("MOCC"). See Dkt.# 19-1, ¶9 at 2.

[24] Dkt.# 19-1, ¶9 at 2.

[25] Dkt.# 19-1 at 7.

[26] Dkt.# 19-1, ¶10 at 2.

[27] Dkt.# 19-1 at 8.

[28] Dkt.# 19-1, ¶11 at 2.

[29] Dkt.# 19-1, ¶11 at 2 – 3.

[30] Dkt.# 19-1 at 9.

[31] Dkt.# 19-1, ¶12 at 3.

[32] Dkt.# 19-1 at 10 and 11.

[33] Dkt.# 19-1, ¶13 at 3.

misconduct; and a lack of positive institutional progress.[34] Despite plaintiff's claim that "the violations [of his constitutional rights] continue to date for no parole hearing has been given after the board has been [sic] provided with the information regarding the errors described[,]"[35] plaintiff's February 12, 2015 Parole Decision Summary, which plaintiff signed and dated, clearly states that he was scheduled for reconsideration in one year, backdated to the November 2014 hearing date,[36] so that he would not be prejudiced by the Parole Board's delay in receiving his psych evaluation.[37] A review of the WVDOC's online Offender Search as of the date of this Report and Recommendation still shows plaintiff's next parole hearing date to be November 1, 2015. His projected release date is May 17, 2018.

Accordingly, defendant Bills cannot be held responsible for PsiMed's staffing shortage and its consequent failure to provide a psych evaluation in time for plaintiff's November 2014 hearing. It is apparent from the record that Bills tried diligently to obtain the evaluation in time for that hearing. It is also apparent that even if the psych evaluation had been ready by the November 19, 2014 hearing date, plaintiff would still have been denied parole for substantive reasons and not because of any incomplete documentation. Liability under 42 U.S.C. §1983 is predicated upon a defendant's own constitutional violations.[38] Because there is no evidence in the record to suggest that Bills was personally responsible for the failure to obtain the psych evaluation by November, 2014, let alone that any of Bills' actions could be construed to have

---

[34] Dkt.# 19-1, ¶14 at 3; see also February 12, 2015 Parole Decision Summary, Dkt.# 19-1 at 13 – 16.

[35] Dkt.# 1-2 at 3.

[36] Dkt.# 19-1 at 13.

[37] Dkt.# 19-1, ¶14 at 3; Dkt.# 19-1 at 13.

[38] Trulock v. Freeh, supra at 275 F.2d 401.

had a causal connection to any harm suffered by the plaintiff,[39] the plaintiff has failed to state a claim upon which relief can be granted against defendant Bills. Therefore, Bills should be dismissed from this action.

### 3) **Daniel Kimble, Unit Manager**

The plaintiff alleges that Daniel Kimble ("Kimble"), acting in his capacity as plaintiff's Unit Manager, violated the plaintiff's constitutional rights by shirking his duties, in failing to "correct the oversights of Defendant Bills" when she failed to arrange for plaintiff's psych evaluation to be done in time for the November 2014 parole hearing.[40] Further, plaintiff alleges that when Kimble was notified of the incident after the fact, he "failed to resolve [the] grievance placed before him."[41] It is apparent from the record that Kimble was only notified of the events preceding the November 2014 incident after the fact.

Kimble's sworn affidavit, attached to the defendants' dispositive motion, avers that as a SMCC Unit Manager, he has no responsibility or involvement in the psychological evaluations performed for inmate parole consideration.[42] Further, he contends he has no supervisory authority over inmate parole; inmate parole officers at SMCC; or, more specifically, no supervisory authority of defendant Joyce Bills.[43] He states that he received plaintiff's grievance about SMCC personnel's failure to prepare documentation necessary for his parole hearing on December 3, 2014; because he had no direct involvement in parole issues, he notified defendant Bills, who informed him that PsiMed had not completed plaintiff's psych evaluation prior to his

---

[39] Zatler v. Wainright, *supra* at 802 F.2d 401.

[40] Dkt.# 1 at 8.

[41] Id.

[42] Dkt.# 19-2, ¶4 at 1.

[43] Dkt.# 19-2, ¶5 at 1.

November2014 hearing; that she had already notified PsiMed; and that PsiMed was going to complete the evaluation.[44] Having verified that the issue was already being addressed by the proper person, Kimble noted on the grievance that a process was underway to address the issue.[45] He avers that he had no further involvement in the matter.[46]

This claim likewise fails to state a claim upon which relief can be granted. Plaintiff has not established that Kimble had any power to correct Bills' "oversights," let alone any personal involvement or causal connection to the postponement of plaintiff's November 2014 parole consideration. It is clear from the record that Kimble's first awareness of the issue was when he received the December 3, 2014 grievance. As for plaintiff's claim that Kimble was at fault for failing to "resolve" his grievance, again, to the extent that plaintiff may be asserting that Kimble was deliberately indifferent to his constitutional rights by denying his administrative grievances, as noted *supra*, that type of claim is also without merit, because that is not the type of personal involvement required to state a <u>Bivens</u> claim.[47] Accordingly, Kimble should be dismissed from this action.

## V. <u>Recommendation</u>

For the reasons stated herein, the undersigned hereby **RECOMMENDS** that the defendants' Motions to Dismiss or in the Alternative, for Summary Judgment (Dkt.# 18) be **GRANTED** and plaintiff's Complaint be **DENIED and DISMISSED with prejudice**.

Further, the undersigned **RECOMMENDS** that the defendant' pending Motion to Strike (Dkt.# 31) be **GRANTED.**

---

[44] Dkt.# 19-2, ¶6 – 8 at 2.

[45] Dkt.# 19-2, ¶9 at 2.

[46] <u>Id</u>., ¶10 at 2.

[47] <u>Paige v. Kuprec</u>, *supra* at 2003 W.L. 23274357 *1.

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, **or by December 22, 2015**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: December 8, 2015

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE